IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F45 TRAINING PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> BODY FIT TRAINING USA INC., <br><br> Defendant. | C.A. No. 20-1194-LPS |
| FISCALNOTE, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUORUM ANALYTICS, INC., <br><br> Defendant. | C.A. No. 20-1736-LPS |
| LOGANTREE LP, <br><br> Plaintiff, <br><br> v. <br><br> FOSSIL GROUP, INC., <br><br> Defendant. | C.A. No. 21-385-LPS |

## **MEMORANDUM ORDER**

At Wilmington, this **2nd** day of **July 2021**:

WHEREAS, Defendants in the above-listed cases filed Rule 12 motions to dispose of patent infringement claims on the bases that certain patent claims are invalid under 35 U.S.C. § 101, because they are allegedly directed to patent ineligible subject matter;

1

WHEREAS, the above-listed cases brought by F45 Training Pty Ltd. ("F45"), FiscalNote, Inc. ("FiscalNote"), and LoganTree LP ("LoganTree") are unrelated to each other;

WHEREAS, the Court heard oral argument in all the above-listed cases on June 25, 2021, and has considered the parties' respective briefs and related filings;[1]

WHEREAS, the Court continues to find that its procedure of addressing multiple Section 101 motions from separate cases in one hearing is an efficient use of judicial resources and a beneficial tool for resolving the merits of Section 101 motions;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, with respect to the above-listed F45 case, Defendant's Rule 12 motion (C.A. No. 20-1194 D.I. 22) is DENIED;

**IT IS FURTHER ORDERED** that, with respect to the above-listed LoganTree case, Defendant's Rule 12 motion (C.A. No. 21-385 D.I. 10) is DENIED; and

**IT IS FURTHER ORDERED** that, with respect to the above-listed FiscalNote case, Defendant's Rule 12 motion (C.A. No. 20-1736 D.I. 10) is GRANTED.

The Court's Order is consistent with the bench ruling announced at the hearing on June 25, 2021, pertinent excerpts of which follow:

> All three motions I'm ruling on today arise under Federal Rule of Civil Procedure 12(b)(6) and contend that there is a failure to state a claim upon which relief can be granted. There is no dispute among the parties as to what the standard is for Rule 12(b)(6) motions here in the Third Circuit.
>
> ... All the motions, of course, present issues under Section 101 relating to patent eligibility. And I will be applying the now familiar two-step framework for patent eligibility set out by the Supreme Court in *Alice*.[2]
>
> Under Section 101, an invention directed to laws of nature, physical phenomenon, or abstract ideas is not patentable. To determine if an invention is patent ineligible, the Court must first determine if the claims are directed to a patent ineligible

---

[1] District Judge Leonard P. Stark and Magistrate Judge Christopher J. Burke jointly presided throughout the argument. The Court adopts the full bench ruling.

[2] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

2

concept. If so, then the Court will look for an element or a combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. If and only if the defendant prevails at both steps one and two, the Court may declare the patent not eligible for patenting and dismiss the patent infringement complaint.

For further recitation of the legal standards that I have done my best to apply today, I . . . also adopt by reference the legal standards as set out more recently by the Federal Circuit in the *Simio v. FlexSim Software Products* case.[3]

[W]ith that background, I'm going to address the specific motions in the order that they were argued. The first case and the first motion arise[] in the *F45 v. Body Fit* case. . . . For the reasons I will explain, that motion is denied.

F45 asserts in its complaint that Body Fit infringes one or more claims of U.S. Patent No. 10,143,890, which I will refer to as the '890 patent, entitled "Remote Configuration and Operation of Fitness Studios from a Central Server."

First, on the issue of representative claims, the motion is directed to all of the claims in the '890 patent and so my ruling applies to all of those claims. Body Fit expressly argued in its opening brief . . . that Claim 1 is representative of all the claims of the '890 patent,[4] and F45 did not respond to this contention or challenge it in any way in its answering brief.

Nonetheless, in its checklist letter, F45 for the first time argued that Claim 1 is representative only of the independent claims, that is, Claims 1, 3, and 7 to 9.[5]

F45 waited too long to make this argument, and its challenge to the representativeness of Claim 1 is untimely and therefore waived. Given the Court's analysis and particularly its conclusion that Body Fit has not shown, at least at this time, that Claim 1 is ineligible for patenting, F45's waiver has no consequence.

The Court will . . . analyze only Claim 1, and based on denying the motion with respect to Claim 1, the Court will therefore deny the motion with respect to all claims of the '890 patent.

As for claim construction, no party in this case contends that claim construction must be performed before ruling on the 101 issues.

I'll turn to the 101 analysis. First, step one. At step one of the *Alice* test, the Court agrees that . . . Claim 1 of the '890 patent is directed to the abstract idea of storing,

---

[3] *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020).

[4] D.I. 23 at 4-5.

[5] D.I. 43 at 1.

sending, and retrieving information over a network. . . . [This] is an abstract idea, and it is a fair characterization of the claim. It does not oversimplify the claim.

F45 concedes that the bare idea of storing and retrieving information is abstract, as is storing, sending, and retrieving information.[6] . . . The Court's conclusion that this is in fact what Claim 1 is directed to is based largely on the plain language of Claim 1, which recites . . . five steps, four of which are clearly abstract based on Federal Circuit precedent.

These are the steps of retrieving a file, communicating a file, receiving the file, and communicating directions from the studio computer to exercise station displays. [A] fifth step brings in a person to periodically physically [re]distribute the exercise stations, and while that one is not as clearly abstract, it does not render Claim 1 overall anything other than directed to an abstract idea for reasons I will get to.

Retrieving, communicating, receiving, and displaying are the type of functional non-specific results-oriented claim language, which the Federal Circuit has repeatedly told us is indicative of an abstract idea. I would cite, for example, the *Interval Licensing* decision,[7] . . . *Two-Way Media*,[8] . . . and *In re TLI Communications*.[9]

That other step, the fourth one listed in the claim, . . . require[s] physically redistributing the exercise station[s], which appears to require a human staff member to perform it. This is a tangible physical step, but it is not a barrier to the conclusion that the claim is directed to an abstract idea.

. . . [W]e know that from a number of cases, including very recently the *Yu v. Apple* decision[10] . . . which found abstract and ineligible claims performed with a digital camera, and where the Federal Circuit said, "whether a device is a tangible system (in § 101 terms, a 'machine') is not dispositive."[11]

And in *In re TLI Communications*,[12] . . . the Federal Circuit said, "[n]ot every claim that recites concrete, tangible components escapes the reach of the abstract

---

[6] D.I. 26 at 15.

[7] *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-45 (Fed. Cir. 2018).

[8] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

[9] *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).

[10] *Yu v. Apple Inc.*, 2021 WL 2385520 (Fed. Cir. June 11, 2021).

[11] *Id.* at *3 n.2 (internal quotation marks and citations omitted).

[12] *TLI Commc'ns*, 823 F.3d at 611.

idea inquiry." And in *Chamberlain Group*,[13] ... the court said, "[w]ithout more, the mere physical nature of the plaintiff's claim elements, e.g. controller interface and wireless data transmitter, is not enough to save the claims from abstractness."

So, this fourth step does not alter the conclusion, nor, I should add, does the fact that some of the other steps arguably also require physical components, i.e., the exercise equipment and the display. So that's the claim language.

The specification does not help F45 at step one, as nowhere does the specification state that the claims are directed to something other than the abstract idea of storing, sending, and retrieving information over a network. That silence is not dispositive, but it is another indication here that the claims are directed to an abstract idea.

Yet another clue that this claim is directed to an abstract idea is the fact that it can be performed by a human, albeit less efficiently and far [more] slow[ly], and it can be practiced with generic computer components. We can refer to this as the mental process test, and in my view, it continues to be used by the Federal Circuit as a clue that the Court can consider especially in conducting the step one analysis. For example, the *Synopsys v. Mentor Graphics* decision[14] ... reaffirms ... the usefulness of this type of analysis even after *Alice* and *Mayo*.[15]

Body Fit here persuasively analogizes the steps of the claim to the hypothetical gym employee who maintains a variable class schedule, sets up equipment, and demonstrates exercises to gym members.[16]

F45's reliance on *McRO*[17] ... is unpersuasive. In *McRO*, the court emphasized that the defendants had not offered any evidence that the claimed process was previously performed by humans. Here, however, as noted, the Court is persuaded based on undisputed common human experience that the claimed processes were or at least could have been performed by humans. And for that, I would additionally cite the example that defendant put in [its] briefing, which I recall related to ... a middle school gym class.[18]

F45 also relies on the *Peloton* decision[19] of this Court, but I don't see how *Peloton* helps F45 at step one. It did not stand for the proposition at step one ... that [any]

---

[13] *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019).

[14] *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146-47 (Fed. Cir. 2016).

[15] *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012).

[16] D.I. 23 at 14.

[17] *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).

[18] D.I. 23 at 17.

[19] *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, 2020 WL 3640064 (D. Del. July 6, 2020).

concrete improvement in the field of fitness is necessarily patent eligible. Instead, as I read *Peloton*, it does not even address step one. In fact, ... the Court says, "I need not and do not decide whether the patents are directed to an abstract idea at *Alice* step one."[20]

Nor is the claim language here like that which this Court considered in *Align v. 3Shape*,[21] ... in which this Court determined that certain claims that simply involved an abstract concept were not directed to an abstract idea. Here, by contrast, for the reasons I tried to explain, the abstract idea lies at the heart of the claim.

So that is my analysis on step one. I find defendant has done what it needs to do at step one, but as I turn to step two, which I must given my conclusions at step one, I find that Body Fit fails, at least at this stage of the case, at step two.

At step two, the Court considers whether the claims contain an element or an ordered combination that ensures that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

Here, the Court agrees with F45 that there is at least a fact dispute as to whether Claim 1 of the '890 patent claims an unconventional combination of structural and functional elements that together address the problems of ... accessibility, motivation, and scalability in the fitness industry.[22] ... [T]he complaint plausibly alleges that the claims enable a new fitness studio concept that motivates clientele to turn up at the fitness studio and which also allows the benefit of being accessible to lay clientele and being able to be scaled at ease to thousands of franchise[e]s.

It is undisputed that ... the invention only uses generic computer components. [S]upport for this [is] at column 6 of the patent, but importantly there is a dispute as to whether the combination of elements, including use of the generic computer components, is well understood, routine, and conventional as of the date of the invention[.] ... [I]t is that dispute which precludes the Court from granting the motion.

We know that that type of dispute precludes the Court from granting the motion from cases like *Bascom*,[23] ... which indicated that a non-conventional and non-generic arrangement of []conventional pieces may be patent eligible. In this case at step two, the dispute in my view really comes down to whether the allegations in the complaint related to conventionality, routineness, and whether this ordered

---

[20] *Id.* at *3.

[21] *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 449 (D. Del. 2018).

[22] *See* D.I. 26 at 3.

[23] *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

6

combination is well understood. The dispute comes down to whether those allegations are wholly divorced from the claim.

I conclude that [P]laintiff's allegations are not divorced from the claim. Instead, they are sufficiently plausible and specific, not merely conclusory, and therefore survive the Rule 12 motion.

As the Federal Circuit stated in *Cellspin*[24] and which I think applies here, and I think Plaintiff has complied with, "[w]hile we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient. As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional."

. . .

F45 plausibly contends that the claim, including its specific physical structure and function, amounts to something more than the practice of an abstract idea, and that is the abstract idea of storing, sending, and retrieving information over a network. I find support for that and for F45's contention in the claim language.

For example, Claim 1 . . . claims "one or more fitness studios each comprising a plurality of exercise stations at which users perform associated exercise routines, each exercise station having an associated display." Exercise stations and the displays at each of them are physical objects that are not accounted for in the abstract idea. They are something more than just the practice of the abstract idea.

The claims then also claim that the studio information program file that is retrieved for a current period is different from a studio information program file that was retrieved for a previous period, thereby providing periodic variation of exercise program[s]. And the claims also call out "periodically physically redistributing the exercise stations." These claim elements as well are not part of the abstract idea, and they are not simply practicing the abstract idea.

I think dependent claims 4 and 6 add even more to the abstract idea. So in my view then, the complaint plausibly alleges, particularly in paragraphs 19 to 21, that in the prior art, the exercise studios did not employ technology-driven DPVSC arrangements where the studio information was communicated from a central location to facilitate streamlined studio configurations, flow management, and exercise instruction[;] whereas the claimed invention does so and solves the problem of motivation, accessibility, and scalability.[25]

---

[24] *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

[25] *See* D.I. 1 ¶¶ 19-21.

In further support of the Court's conclusion, the complaint plausibly alleges commercial success which is alleged . . . to have been traceable to the patent and which is arguably reflected in the articles that are incorporated by reference and attached to the complaint[. That] further supports the plausibility of F45's contention that the combination of elements here captures something inventive.

At this early stage, Body Fit has not demonstrated that at the date of the invention, the combination of elements of Claim 1 was routine, conventional, and well understood, particularly as . . . the claim involves physical components[:] exercise machines, and displays.

One element requires human beings to move physical equipment around. The patent expressly discusses how the invention solves the problem of keeping users motivated to continue to go to fitness studios and . . . there are plausible allegations that due to the use of the patented method, F45 has enjoyed tremendous commercial success as supported by the materials attached to the complaint and where as well the practice of the claim is plausibly alleged to have helped solve problems of accessibility and scalability.

My bottom-line point is [that] with all . . . that I have just explained, Body Fit has not shown at step two this is a case that can be or should be dismissed. It may be that Body Fit will ultimately prove by the required clear and convincing evidence that the claimed combination of elements was conventional, routine, and well understood at the pertinent date, but the Court is unable to make that finding today on the limited record and drawing all reasonable inferences in the plaintiff's favor, as the Court is required to do.

We know from *Aatrix*,[26] . . . that patent eligibility can be resolved at this early stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." Body Fit will be permitted to raise the step two issue on summary judgment if it believes that the way the evidence develops as this case goes forward leaves [it] with a good faith basis to do so. But at this point, as I have said, the motion to dismiss in this first case, *F45 v. Body Fit*, is denied.

[I'll now] move on to the second case, *LoganTree v. Fossil Group*. In this case, we have Fossil's Rule 12(b)(6) motion. This motion is denied.

The motion is directed to U.S. Patent No. 6,059,576 entitled "Training and Safety Device, System and Method to Aid in Proper Movement During Physical Activity."

On the representative claim issue, there is an issue. There are three independent claims – 1, 3, and 20 – and 182 dependent claims. Fossil contends that Claim 1 is representative, and LoganTree agrees that it is representative of the three

---

[26] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

8

independent claims, but the parties disagree over whether the dependent claims need to be analyzed separately as well. As best as I can tell, the defendant failed to address whether Claim 1 is representative of some subset of those dependent claims, specifically, Claims 2 to 12, 14 to 19, and 21 to 29. In any event, given my conclusion that Claim 1 is not patent ineligible, the Court will accept for purposes of the pending motion that Claim 1 is representative of all claims of the '576 patent. Therefore, on Fossil's own logic, all claims of the '576 patent are not patent ineligible. I will only address, therefore, Claim 1.

The parties agree that no claim construction is needed at this time, so I will turn to the *Alice* analysis at step one.

The Court must analyze the focus of the claim, [that is,] its character considering especially the patent's claimed advance. I cite for those concepts, *SAP*,[27] . . . as well as . . . *Finjan* . . . .[28]

Fossil argues that the representative claim is directed to the abstract idea of tracking and monitoring movement, which is performed by receiving, interpreting, storing, and responding to physical movement data. I take that recitation from [its] brief.[29] This is an abstract idea, but the claims are not directed to this abstract idea. Instead, I conclude that Fossil's proposed abstract idea oversimplifies what Claim 1 is directed to. It is not fair to the claim.

Generalizing Claim 1 as being directed to tracking and monitoring movement is inconsistent with the Federal Circuit's instruction that courts be careful to avoid oversimplifying [a] claim by looking at [it] generally and failing to account for the specific requirements of the claim. I would cite for that the *CardioNet* decision.[30]

Similarly, in *McRO*,[31] the Federal Circuit told us [that] looking at the claim generally and failing to account for the specific requirements of the claim is not a basis on which the Court can find claims ineligible for patenting. . . . And the Federal Circuit warned us in *Enfish* . . . [that] "describing the claims [at] such a high level of abstraction and untethered from the language of the claim[s] all but ensures that the exceptions to Section 101 swallow the rule."[32] So that is not a path I can go down, and I'm afraid that the abstract ideas articulated by the defendant would wrongly take me down that path.

---

[27] *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

[28] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).

[29] D.I. 11 at 9.

[30] *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020).

[31] *McRO*, 837 F.3d at 1313.

[32] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Instead, the Court agrees with LoganTree that the claims of the '576 patent are specifically directed to an improvement of physical movement monitoring devices.[33] . . . This is evident to me from Claim 1 itself as well as the specification, particularly the discussion in columns 1 and 2.

First, the claim is directed to a physical device. While that is not dispositive, it is an important factor, and it is not at all reflected in the proposed abstract idea. More specifically, the claim is directed to a device having both a motion sensor and a microprocessor. This specific combination of physical components is not reflected in the proposed abstract idea offered by the defendant. It seems to be important to the claims how the sensor and the processor share the various functions. But again, Fossil's proposed abstract idea does not take any account of this. The specific arrangement between the sensor and the microprocessor, according to the specification, contributes to the improvement that the claimed device "gives instant information to the wearer at the moment of incorrect movement and also records the information for future reference and analysis."[34] That is a quote in part from the '576 patent . . . , and the specification indicates that the prior art devices lack these functionalities. But again, none of this specific structure [nor] its combination is reflected in the abstract idea offered by the defendant.

There are still other ways in which the proposed abstract idea oversimplifies the claim. In the claim, the microprocessor stores time-stamped information about the occurrences of specific user-defined events to allow for future reference and analysis, including tendencies of unsafe movement habits[35] and whether improper movements occur more often in the morning or afternoon.[36] I'm citing for all of that to columns 1, 2, and 6 of the patent. None of that is . . . fairly encompassed in the abstract idea offered . . . by the defendant.

Also, . . . analysis . . . is arguably [(at least)] captured in the claims. It's not expressly called out in the claim, although it is expressly called out in the specification. At this point, I don't have a basis to conclude that the analysis step taught in the specification is not part of the claim. And if it turns out that it is part of the claim, then it's further support for my conclusion today because that analysis step is . . . definitely not reflected in the abstract idea identified by Defendant, which would be yet another oversimplification.

[Also,] "[a]n output indicator [. . .] for signaling the occurrence of user-defined events,"[37] that it is warning the user, which improves upon one of the prior art

---

[33] D.I. 18 at 14.

[34] '576 patent at 6:17-19.

[35] *Id.* at 1:62-63.

[36] *Id.* at 2:2-4.

[37] *Id.*, cl. 1.

10

detectors by "providing [...] instant feedback regarding the physical movement being monitored"[38] ... [is] part of the claim but it's not ... part of the abstract idea. . . . .

So here, I find the analogy to *CardioNet*[39] to be a persuasive one. [T]here, the claims were drawn [to] a device for detecting and recording the presence of atrial fibrillation or atrial flutter in a patient. The court found the claims there were not directed to an abstract idea but were instead "directed to a patent-eligible improvement to cardiac monitoring technology."[40] ... Similarly, here, in my view, Claim 1, read considering the written description, focuses on specific means or methods that improve the functionality of the physical movement monitoring device.

Now, I recognize that Fossil has offered today a new proposed abstract idea, one which at least recognizes that the claims are directed to a physical device. This new proposal does not alter my conclusion . . . because it's not correct that the only oversimplification I have found relates to the lack of reference to the physical device.

But also, I should add that in fairness to Plaintiff as well as the Court, there has to come a time in which . . . the defendant is no longer permitted to alter what it is arguing is the abstract idea to which the claim is directed. Moreover, the shifting in articulation of the purported abstract idea itself casts doubt on whether the claim, as a matter of law, truly is directed to an abstract idea. And here, I think it is noteworthy that in the briefing, the defendant articulated the abstract idea in different ways, and then again . . . offered a new way today.

Relatedly, I think this case illustrates the potential perils of continuously shifting the articulation of what the purported abstract idea is. Fossil's best argument at step two is that the claim amounts to nothing more than the practice of the abstract idea, but for me to evaluate that argument, I first must know what the abstract idea is. So, a "shifting sand[s]" approach to articulating the abstract idea makes [the] step two analysis difficult, if not impossible.

Because Fossil has oversimplified what Claim 1 is directed to, and the claim is not directed merely to gathering and analyzing information . . . and then displaying the result, Fossil's comparison to the claims found ineligible in *Electric Power Group*[41] fail[s].

---

[38] *Id.* at 10:32-33.

[39] *CardioNet*, 955 F.3d 1358.

[40] *Id.* at 1362.

[41] *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016).

Fossil also argued that the mental process test supports [a] finding in its favor at step one. Again, I think this mental process test is often a valuable clue, particularly at step one. . . . I'll cite here again *Synopsys*,[42] which I think stands . . . for the proposition that courts can continue to look to this mental process test. Fossil contends that . . . the claim can be performed "mentally or with a pencil and paper, for example, by a personal trainer tracking specific movements and specific timing when those movements occur."[43] That's a summary of a quote from . . . one of the briefs filed by Fossil.

But even assuming without deciding that the mental process test supports the conclusion that the claims here are directed to an abstract idea, this is, in the end, merely a clue and not dispositive[. Given] the conclusions about the proposed abstract idea oversimplifying the claim, I find here that the mental process test does not . . . provide enough support for me to reach [a] conclusion in favor of . . . [D]efendant at step one.

Because . . . [D]efendant has not prevailed at step one, it is not necessary to address step two, and I will not address step two. I will be denying Fossil's motion based on its failing at step one.

And with that, I will turn to the third case, *FiscalNote v. Quorum Analytics*. Here, we have Quorum's Rule 12(b)(6) motion. For the reasons I'm going to explain, Quorum's motion is granted.

It is granted with respect to both patents, U.S. Patent Nos. 10,953,002, entitled "Systems and Methods For Analyzing Policymaker Alignment with Organizational Posture," and 10,672,092, "Systems and Methods for Mapping to Milestones and Policymaking Process." The two patents share a specification that is substantively identical, although of course the claims differ, but like the parties, I will refer interchangeably to the two specifications.

On the representative claim issue, Quorum's motion is directed to all claims of both patents. Quorum proposes that Claim 1 of the '002 patent is representative of all claims of the '002 patent and that Claim 10 of the '092 patent is representative of all claims of the '092 patent. FiscalNote argues that for the '002 patent, the Court must assess Claim 1, as well as dependent claims 4, 6 to 9, 17 to 19, and 23; and that for the '092 patent, the Court must assess Claim 10 as well as dependent claims 2 and 19.

On this dispute about representative claims, the Court sides with Quorum. While separate analyses are required for the '002 and '092 patents, only one claim for each of these two patents needs to be addressed.

---

[42] *Synopsys*, 839 F.3d at 1146.

[43] D.I. 21 at 4.

This is because for each of the two patents, the additional claims identified by FiscalNote and the representative claims identified by Quorum are substantially similar and linked to the same abstract idea. And that is, as I understand it, essentially the test for representative claims. I take that from *Content Extraction*.[44]

Generally, and as noted in the largely common specification, all the claims of the '002 patent and the '092 patent are linked to a similar idea. That is, "systems and methods that incorporate machine learning and data aggregation techniques to provide policymaking analyses and predictions."[45]

Nor has FiscalNote presented any meaningful argument for the distinctive significance of any claim limitation not found in the representative claim. That, too, is part of the analysis as to whether I can rely on the representative claim or claims. I get that from *Berkheimer*.[46] Thus, Claim 1 of the '002 patent is representative for purposes of Section 101 analysis of all claims of the '002 patent, just as Claim 10 of the '092 patent is representative of all claims of the '092 patent for purposes of the 101 analysis.

Notwithstanding that finding, and in an abundance of caution, I will, before I conclude, address on the merits all the claims that Plaintiff has asked me to address.

The next issue I confront is claim construction, and here there is something to say. In the checklist letter, FiscalNote identified the term "scraped from the Internet" as being in dispute and proposes that it be construed as "collecting data from the Internet with the aid of a computer." From this, it follows, in FiscalNote's view, that the inventions are plainly not a series of mental steps and cannot be performed manually by a human[47] and FiscalNote suggests that this would therefore impact the results of the 101 analysis.

In the Court's view, FiscalNote waived its opportunity to argue that claim construction is necessary before the Court can resolve the 101 motion by not providing the Court, in its answering brief, a proposed construction and at least some explanation as to what difference adoption of that proposed construction would make. FiscalNote does a little bit better in its checklist letter, but that also is too late.

In any event, Quorum, now being on notice of FiscalNote's claim construction position, argues persuasively that even adoption for purposes of this motion of

---

[44] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

[45] '002 patent at 2:15-18.

[46] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

[47] D.I. 20 at 1.

FiscalNote's proposed construction makes no difference to the 101 analysis. The Court agrees with Quorum on that point. Even adopting FiscalNote's new proposed construction still leaves us with nothing more than patent claims that involve normal computer operations.

So, in reaching the conclusions that I will articulate below, I have assumed that the claimed "scraping from the Internet" must be performed with the aid of a computer. That is, I have adopted for purposes of this motion only the proposed construction of that claim term offered by the plaintiff.

So, let me turn to the analysis. I'll address step one for both patents and then I will move on to step two. At step one, the Court agrees with Quorum that the representative claim of the '002 patent is directed to the abstract idea of collecting, analyzing, and displaying policymaker data. As Quorum correctly explains, the claims of the '002 patent are directed to analyzing decisions by policymakers such as elected officials, to assess where they stand with respect to certain issues. That is from the opening brief.[48] And even the complaint[49] alleges that the '002 patent "provides techniques to gather, organize, and analyze data." That is a quote. And I think it supports what I find is the abstract idea that the '002 patent claims are directed to.

The Court further agrees with Quorum that the representative claim of the '092 patent is directed to the abstract idea of collecting and storing milestone data for different locales and then presenting that data using standardized terminology. As Quorum states, the claims of the '092 patent are directed at "using standardized terminology to describe local milestones such as a bill receiving a floor vote in the local legislative process, where the milestones may be described using specific local terminology." That, too, is a quote from the opening brief.[50]

And here again with the '092 patent, even FiscalNote's contentions support the abstract nature of the claims. FiscalNote states in its answering brief[51] that the '092 patent is directed to "an Internet-based system [that] presents a timeline of events corresponding to legislative milestones where the milestones are data in different formats that are normalized such that local milestones are replaced with normalized ones." I cleaned up the quote a little bit but that is essentially what the plaintiff says.

To me, that is an abstract idea, and it's basically the same abstract idea identified by Defendant. Collecting and analyzing information, displaying results, and

---

[48] D.I. 11 at 1.

[49] D.I. 1 ¶ 24.

[50] D.I. 11 at 1.

[51] D.I. 14 at 15.

14

storing data are all abstract ideas, individually and in combination. We know this from many cases at this point.[52]

Unlike what I found in one of the cases earlier today, here the defendant has not oversimplified the claims. The abstract ideas identified by Quorum do fairly capture what the claims are directed to.

FiscalNote has said . . . at times . . . that each of these patents is directed to improvements in computer technology, but in my view, that is incorrect. FiscalNote has identified nothing in either patent to support its contention and the Court cannot find support for it in these patents, even recognizing that these are lengthy patents.

Nothing in the specification says that either of these patents is about improving computers. This specification, unlike some that I addressed earlier today, isn't even silent on this point. Instead, it affirmatively explained the problems it is solving and they're not computer-related problems. For example, the '002 patent, especially at columns 1, 2, and 13, explain[s] that the patent is directed to what might be called a computerized lobbyist. And columns 17 to 19 explain that one can use any type of computer hardware as well as undisclosed computer software to practice the invention.

Likewise, for the '092 patent, especially if you look at columns 32 to 34 of the specification, the patent tells us that what is really going on is just the use of a computer for what is the basically abstract idea of translating diverse language used around the country or the world for referring to policymaking milestones and converting that diverse language into a common normalized status term

. . . *TecSec*[53] . . . instructs the Court to consider whether claim focus is "on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool."

Relatedly, we're told to inquire whether the patent provides a solution to a problem specifically arising in the realm of computer networks []or computers and whether the claim identifies the specific improvement rather than only claiming a desirable result or function.[54]

When I asked those questions of the '002 and the '092 patents, the answers all support Quorum and not FiscalNote.

---

[52] *See, e.g., Trading Techs.*, 921 F.3d at 1384-85; *Elec. Power Grp.*, 830 F.3d at 1353; *SAP Am.*, 898 F.3d at 1167.

[53] *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quoting *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-07 (Fed. Cir. 2020)).

[54] *Id.*

The claims of both patents use only results-oriented functional claim language and lack specificity . . . . [T]he '002 patent[,] particularly Claim 1, a representative claim, invokes computers as a tool, claiming only desirable results rather than a specific improvement to a computer-specific problem. For example, you can use only off-the-shelf conventional computer components, which further supports this conclusion. I cite, for example, column 11 at lines 54 to 59.

Similarly, for the '092 patent, representative claim 10 invokes computers as a tool, again claiming only desirable results rather than a specific improvement to a computer-specific problem. The specification again, the same portion I just cited, column 11, lines 54 to 59, expressly refers to conventional computer components and how they can be used to practice the claims. There are other references throughout the very long specification that additionally make clear we're talking about conventional computer components only as well as software that is not even identified with any specificity.

As the claims make clear as well, the system practicing the claims of the '092 patent will access Internet data, normalize that data by converting the terms and then map those terms to a timeline for display to the user. This is abstract and is not a computer-focused improvement.

Additionally, what I have referred to today as the mental process test provides an additional clue that FiscalNote's claims are directed to an abstract idea. I incorporate here by reference all my prior discussions of the continuing usefulness of the mental process test. Applying that test here, all of what the claims of the '002 and '092 patents cover could be practiced by, and as is explained in the specification, have long been practiced by, humans without computers.

For the '002 patent, the patent itself explains that lobbyists and internal analysts have long done that which the '002 patent makes easier and more efficient and quicker.[55] The steps of the claims mirror how a human working with a pen and paper would collect and analyze policymaker data to assess how policymakers['] view[s align] with those of an organization.

Similarly, for the '092 patent, the patent itself explains that humans can and have normalized legislative processes and outcomes with specifications. Again, column 1 explains that this process was used in the past by human beings and that the patent is merely using computers to reduce the cost. The entire concept of a normalized outcome is contingent on a human-oriented outcome[:] understanding potentially varying terms for the same policymaking outcome.

As I have now at great length explained, I think that these claims do not survive the step one analysis. That is, Defendant has met its burden at step one.

---

[55] '002 patent, cols. 1-2.

Let me turn to step two. At step two, the Court determines whether there is a transformative improvement that amounts to more than a mere practice of the abstract idea. Here, there is not. Instead, Quorum has shown that the claims of the '002 and '092 patents are not patent eligible.

As an initial matter, but one of great significance in the context of this case, very much of what FiscalNote argues at step two, in my view, appears to presume that the claims here are directed to a computer-based improvement. As I have already explained and will not repeat, these claims plainly are not directed to that.

In my view then, FiscalNote has little left to its argument. There is little left for me to analyze at step two, but I will do the analysis that is required. Everything that Plaintiff asserts that the claims add beyond the abstract idea amounts to nothing more than performing the idea more quickly, more efficiently, using generic computer components and software, which we know from many Federal Circuit decisions is . . . not patent eligible subject matter.

Based on FiscalNote's contentions, the Court understands it must assess whether there is a fact dispute or at least a fact dispute as to whether the ordered combination of the limitations of the representative claims gives rise to an invention of something more than just practicing the abstract idea. In addressing this issue, the law is clear that the abstract idea itself cannot supply the inventive concept no matter how groundbreaking the abstract idea may be. We know this from, among other places, *Trading Technologies*[56] and *BSG*,[57] which states that "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept. . . . If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."[58]

And that is essentially what is going on here. With respect to the '002 patent, FiscalNote contends it has invented a more customizable method of improving analysis of policymaker data. The specification teaches that the invention results in "more accurate prediction and more global analysis of policymaking, traditional lobbying and/or algorithm."[59] In the Court's view, this is just practice of the abstract idea to which Claim 1 is directed and does not help FiscalNote at step two. Even assuming FiscalNote's purported improvement did not exist or did not exist in the prior art and that it is novel, it would still amount to "maybe a new idea, but

---

[56] *Trading Techs.*, 921 F.3d at 1385.

[57] *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

[58] *Id.*

[59] '002 patent at 11:60-62.

still an abstract one." And we know from *Simio*[60] that that is not sufficient for the plaintiff.

It's similar with the '092 patent. Maybe FiscalNote invented the ability to efficiently recognize and organize and display unfamiliar terms, but this is just practicing the abstract idea to which Claim 10 and the '092 patent is directed and does not help FiscalNote at step two. Unlike in *Enfish v. Microsoft*,[61] there is no specific implementation of the solution to a problem here. So, the analogy to *Enfish* is not persuasive, nor is the analogy that FiscalNote makes to *DDR Holdings*.[62]

For reasons I have explained at length, the claims here do not solve a problem specifically arising in the realm of computer networks, unlike the claims that survived in *DDR Holdings* and in *Enfish* as well. I've also referred to *Cellspin*, but unlike in *Cellspin*, there here are not allegations in the complaint which must be taken as true which overcome the motion to dismiss.

Instead, here, as I have already basically said, the specification essentially doomed the patent eligibility of the patent claim . . . . The specification is not silent. Instead, it teaches patent claims which at bottom are just taking longstanding human behavior and doing [it] with conventional and unspecified and undisclosed computer components and software. This is not patent eligible subject matter.

While I have sided with Quorum on the representative claim disputes, in the interest of completeness, I will now quickly run through what is added by each of the other claims that FiscalNote asks me to separately consider. Nothing in any of those claims alters the Court's conclusion at step one or step two. In the '002 patent:

- Dependent claim 4 requires the ability to adjust weighting of issues.

- Dependent claim 6 requires adjustment of visual displays based on weighting of issues.

- Dependent claim 7 requires adjustment of visual displays based on updated information.

- Dependent claim 8 requires that the display be interactive for viewing policymaker information.

- Dependent claim 9 requires the identity of each policymaker be displayed.

---

[60] *Simio*, 983 F.3d at 1354.

[61] *Enfish*, 822 F.3d at 1339.

[62] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).

- And claim 17 requires that the display show whether an individual supports [or opposes] the organization's posture.

- Dependent claim 18 requires differential weighting of the individual policymaker's position.

- Dependent claim 19 requires adjusting the graphical display after weighting of issues is applied.

- And dependent claim 23 requires the ability to weight the issues according to the organization.

At best for FiscalNote, each of these dependent claims may add something that was unknown in the prior art but none of them adds anything beyond practicing the abstract idea. They add nothing that amounts to anything more than further analyzing and displaying existing data based on user input. So, they add nothing that alters the step one or step two analyses.

Similarly, for the '092 patent:

- Dependent claim 2 requires scraping to cover legislative documents from different governments.

- Dependent claim 19 requires updating information based upon machine learning.

Just as with the '002 patent, each of these dependent claims do[es] nothing more than potentially add a novel limitation, but those limitations merely amount to practice of the abstract idea of normalizing policymaker data. They do not, therefore, in any way alter the Court's conclusion with respect to step one or step two.

The Court will not permit amendment of the complaint in this case. Any amendment would be futile given the Court's conclusion based on the legal conclusion . . . at step one that the claims are directed to the abstract ideas I have identified. In my finding, I have [considered] the claim limitations and the statements in the specification themselves, all of which are fixed and cannot be changed in litigation and cannot be pled around. It follows that the claims of these patents, the '002 and the '092, are not directed to patentable subject matter. Any attempt to . . . amend the pleading would be futile. FiscalNote is, and will remain, unable to state a claim for patent infringement on which relief could be granted. Therefore, Quorum's Rule 12(b)(6) motion to dismiss will be granted and the Court will close this case.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE